Copy mailed to plaintiff 8-28-20 Dh

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
FRANCIS HENRY RUGGIERO,                     :
                Plaintiff,          :
                                  :
v.                                          :
                                  :       **OPINION AND ORDER**
COUNTY OF ORANGE; SHERIFF CARL E.           :
DUBOIS; SERGEANT K. LYONS; CAPTAIN          :       19 CV 3632 (VB)
JAMES POTTER; CORRECT CARE                  :
SOLUTIONS, LLC; DR. SALWA KHOURI;           :
and HEALTH SERVICE ADMINISTRATOR            :
IBELLIS DIAZ,                               :
                Defendants.         :
---------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Francis Henry Ruggiero, proceeding pro se and in forma pauperis, brings this

action pursuant to 42 U.S.C. § 1983 against defendants the County of Orange, Sheriff Carl E.

DuBois, Sergeant ("Sgt.") K. Lyons, Captain ("Capt.") James Potter (together, the "County

Defendants"), as well as Correct Care Solutions, LLC ("CCS"), Dr. Salwa Khouri, and Health

Service Administrator ("HSA") Ibellis Diaz (together, the "CCS Defendants").  Plaintiff alleges

violations of his First, Eighth, and Fourteenth Amendment rights.

      Now pending are the CCS Defendants and the County Defendants' motions to dismiss

the amended complaint pursuant to Rule 12(b)(6).  (Docs. ##56, 60).[1]

      For the following reasons, the motions are GRANTED IN PART and DENIED IN

PART.

      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

---

[1]    Plaintiff did not oppose the motions, despite having been granted multiple extensions of
time in which to do so.  (See Docs. ##69, 75).

# BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded allegations in the amended complaint and draws all reasonable inferences in plaintiff's favor, as summarized below.[2]

At all relevant times, plaintiff was a parole violator confined at Orange County Jail ("OCJ").

## I.  February 27, 2019, Emergency Room Visit and Misbehavior Report

Plaintiff alleges defendants filed a false misbehavior report against him with respect to his visit to a hospital emergency room on February 27, 2019.  The report, a copy of which plaintiff attaches to the original complaint, states that on February 27, 2019, after HSA Diaz consulted with Dr. Khouri, HSA Diaz sent plaintiff to the hospital to evaluate his abdominal pain.  According to the report, when plaintiff arrived at the hospital, he complained of ankle pain—as opposed to abdominal pain—and requested Percocet and Clonazepam, which plaintiff told the hospital doctors he had been prescribed at OCJ.  The report states HSA Diaz advised non-party Sgt. Weed that plaintiff was not prescribed such medication at OCJ.  The report notes that the emergency room doctor believed plaintiff to be malingering.  The report concludes, "Inmate Ruggiero was attempting to manipulate the [Emergency Department] doctor and was seeking narcotic medication."  (Compl. at ECF 23).[3]

---

[2]     Plaintiff filed his original complaint on April 22, 2019, and annexed exhibits to same. (Doc. #2 ("Compl.")).  On October 21, 2019, plaintiff filed an amended complaint (incorrectly entitled second amended complaint), but did not annex any exhibits thereto.  (Doc. #40 ("Am. Compl.")).  In addition, the amended complaint omits facts pleaded in the original complaint. Because plaintiff is proceeding pro se, the Court construes both complaints together as the operative complaint.

[3]     "ECF __" refers to the page numbers automatically assigned by the Court's Electronic Case Filing system.

Based on information provided by HSA Diaz, Sgt. Weed filed the misbehavior report on the evening of February 28, 2019.  Plaintiff was charged with disruptive conduct, pretending to be sick or injured, and violating general rules.  Plaintiff alleges that as a result, from February 28 to March 5, 2019, he was "confined" and denied "rec, phone, school, law library, TV."  (Am. Compl. at ECF 20).  Although plaintiff alleges the report was falsified and filed in retaliation, plaintiff does not specifically allege for what he was being retaliated against.

According to plaintiff, on March 5, 2019, he was found not guilty of the charges.

II.   Alleged Sexual Abuse

Plaintiff alleges that on the morning of February 28, 2019, he was called into an examination room in the medical unit for an X-ray.  Plaintiff alleges Dr. Khouri and HSA Diaz were present in the examination room and non-party Correction Officer ("C.O.") Parano was standing at the door.

Plaintiff claims he was told to sit in a chair and that Dr. Khouri then screamed at plaintiff, "I don't give a fuck who your God is and you will not disrespect my staff."  (Compl. at ECF 3).  Plaintiff further alleges HSA Diaz screamed, "you fake all your injuries you faked every thing [sic]."  Plaintiff alleges HSA Diaz was referring to plaintiff's February 27, 2019, visit to the emergency room for abdominal pain.  (Id.).

Plaintiff alleges he responded to Dr. Khouri and HSA Diaz by explaining that he had medical records from the emergency room indicating he had reason to go to the hospital.  According to plaintiff, those records stated plaintiff had "fecal retention & fatty liver and a right ankle sprain."  (Compl. at ECF 3).  Plaintiff alleges HSA Diaz continued yelling at plaintiff "in a threatening manner" and threatened to "write [him] up."  (Id. at ECF 3).  Plaintiff alleges that

3

after HSA Diaz gave him a laxative to drink, HSA Diaz and C.O. Parano left the examination room.

According to plaintiff, Dr. Khouri then instructed him to get on the examination table and unbutton his jumpsuit, which he did.  Plaintiff claims Dr. Khouri listened to plaintiff's chest and then took his temperature and blood pressure.  Plaintiff alleges Dr. Khouri then "put her hands in [plaintiff's] underwear and squeezed [plaintiff's] penis and testicles so hard [plaintiff] lost [his] breath and tears came to [his] eyes."  (Am. Compl. at ECF 12).  Plaintiff claims Dr. Khouri told him to button his jumpsuit and "get the fuck out."  (Compl. at ECF 4).

Plaintiff alleges that at dinner that evening, non-party Sgt. Miller told him he was being written up for disruptive conduct, pretending to be sick or injured, and for violation of general rules.  Plaintiff claims he tried to report the alleged sexual assault incident to Sgt. Miller, but that Sgt. Miller "slam[med] [the] cell door and walk[ed] away."  (Compl. at ECF 4).

According to plaintiff, the following morning, he reported Dr. Khouri's alleged assault to Sgt. Lyons, who took plaintiff's statement.  Plaintiff alleges Sgt. Lyons then reported the assault to Prison Rape Elimination Act ("PREA") Coordinator Capt. Potter, who then reported the incident to Sheriff DuBois.  Plaintiff further alleges that as a result, two "sheriff investigator[s] came to take [his statement]" later that day.  (Compl. at ECF 4).  However, according to plaintiff, Sgt. Lyons did not follow protocol as he did not send plaintiff to the medical unit or to the emergency room so plaintiff could have a "rap[e] kit done."  (Am. Compl. at ECF 12).  Plaintiff further alleges he asked Sgt. Lyons to go to the medical unit so "evidence can be collected," including to photograph injuries to his penis and testicles, but Sgt. Lyons told him go back to his cell.  (Id. at 17).

In addition, despite filling out a CCS "sick slip" following the assault, plaintiff alleges he was not called for an examination.  According to plaintiff, there is no log of him being treated in the medical department.

As a result of the alleged sexual assault, plaintiff claims he had "bruises and hand marks on [his] testicles and penis for weeks," still feels pain in both his penis and testicles, "can't ejaculate when in sexual intimacy," and suffers from "[r]ape trauma syndrome (RTS) (nightmares)."  (Am. Compl. at ECF 6).  Plaintiff further alleges Dr. Khouri's contact with plaintiff has caused him nightmares and flashbacks of sexual abuse he suffered as a child and "brought [plaintiff] to the brink of suicidal ideation."  (Id. at ECF 10, 11).

Plaintiff claims he also filed a "written complaint" with the Orange County Sheriff's Office.  (Compl. at ECF 4).  However, according to plaintiff, two weeks later, "the case was drop[p]ed."  (Am. Compl. at ECF 18).

Plaintiff further alleges that on that March 20, 2019, Dr. Khouri "made [a] sexual advancement to [plaintiff]" by winking at him, even though the sheriff's investigators told him it was "the policy" that he would not be in the same place with Dr. Khouri after the alleged assault. (Compl. at ECF 6, 30–31; Am. Compl. at ECF 15).

III.    Grievance Process

On March 1, 2019, plaintiff filed a grievance regarding the alleged sexual assault. Plaintiff alleges that the "chief administrative officer" denied his claim on the merits and that on March 18, 2019, plaintiff requested his grievance be submitted to the Citizen's Policy and Complaint Review Council ("CPCRC").[4]  (Am. Compl. at ECF 18).  Plaintiff claims the

---

[4]     The CPCRC is a seven-member board overseen by the Commission of Correction that reviews inmate complaints and grievances.  See Who We Serve, https://www.ny.gov/agencies/commission-correction (last visited Aug. 18, 2018).

grievance coordinator did not provide him with a receipt indicating his grievance had been appealed to the CPCRC.

In addition, plaintiff alleges that on March 14, 2019, he submitted another grievance stating that he had been prohibited from mailing certified legal mail on March 12, 2019, in retaliation for reporting the alleged sexual abuse.  The grievance was denied as being meritless because "[i]nmates are responsible for sending out certified postage mail at their expense." (Compl. at ECF 25).

Finally, plaintiff alleges that on March 20, 2019, he submitted a grievance respecting the incident in which Dr. Khouri allegedly winked at him.

## DISCUSSION

I.    Legal Standard

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[5]  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows

---

[5]    Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

The Court must liberally construe submissions of pro se litigants and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). Nor may the Court "invent factual allegations" a plaintiff has not pleaded. Id.

Generally, in considering a motion to dismiss, a district court may consider the complaint's factual allegations, documents attached to the complaint as exhibits, matters subject to judicial notice, documents integral to the complaint, and documents incorporated into the complaint by reference. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). A court may consider a pro se plaintiff's prior complaint in deciding a motion to dismiss where exhibits were attached to a prior complaint but not the more current complaint. See James v. Gage, 2019 WL 1429520, at *6–7 (S.D.N.Y. Mar. 29, 2019).[6]

---

[6]     Because plaintiff is proceeding pro se, he will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

II.     Exhaustion of Administrative Remedies

The CCS Defendants argue plaintiff's claims for deliberate indifference to serious

medical needs, retaliation, and procedural due process should be dismissed because plaintiff did

not exhaust his administrative remedies.

The Court disagrees.

Under the Prison Litigation Reform Act, "[n]o action shall be brought with respect to

prison conditions under [Section 1983], or any other Federal law by a prisoner confined in any

jail, prison, or other correctional facility until such administrative remedies as are available are

exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement "applies to all inmate suits about

prison life, whether they involve general circumstances or particular episodes, and whether they

allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).

"Failure to exhaust administrative remedies is an affirmative defense under the PLRA,

not a pleading requirement."  Williams v. Corr. Officer Priatno, 829 F.3d 118, 122 (2d Cir.

2016).  "Accordingly, inmates are not required to specially plead or demonstrate exhaustion in

their complaints."  Id.  Thus, when "a prisoner indicates that he has taken some steps toward

exhaustion, district courts will normally not infer from his silence that he failed to take the

remaining steps that full exhaustion would require."  Huggins v. Schriro, 2015 WL 7345750, at

*3 (S.D.N.Y. Nov. 19, 2015), report and recommendation adopted, 2016 WL 680822 (S.D.N.Y.

Feb. 18, 2016).  "However, a district court still may dismiss a complaint for failure to exhaust

administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy

the PLRA exhaustion requirement."  Williams v. Corr. Officer Priatno, 829 F.3d at 122.

Here, it is not clear on the face of the amended complaint that plaintiff failed to exhaust his administrative remedies.  Indeed, plaintiff makes numerous allegations in the amended complaint respecting grievances filed and has submitted copies of several grievances he filed.

Accordingly, at this early stage of the proceedings, the Court will not dismiss plaintiff's claims for failure to exhaust administrative remedies.  If appropriate, this argument can be raised at summary judgment.

III.    Sexual Abuse Claim

The CCS Defendants argue plaintiff fails to state a claim for sexual abuse against Dr. Khouri.

The Court disagrees.

"[S]exual abuse of a prisoner by a [jail official] may in some circumstances violate the prisoner's right to be free from cruel and unusual punishment."  See Boddie v. Schnieder, 105 F.3d 857, 860–61 (2d Cir. 1997).  The Second Circuit has explained that "the principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the [jail official] or humiliate the inmate."  Crawford v. Cuomo, 796 F.3d 252, 257–58 (2d Cir. 2015).  To state such a claim, a plaintiff's allegations must satisfy an objective prong and a mens rea prong.  Id. at 256.

With respect to the objective prong, "severe or repetitive sexual abuse of an inmate by a [jail official] can be objectively, sufficiently serious enough to constitute an Eighth Amendment violation."  Boddie v. Schnieder, 105 F.3d at 861.  Indeed, "a single incident of sexual abuse, if sufficiently severe or serious, may violate an inmate's Eighth Amendment rights."  Crawford v. Cuomo, 796 F.3d at 257.

The Second Circuit has yet to resolve whether a pretrial detainee's claim

of sexual abuse by a jail official is subject to an objective or subjective <u>mens rea</u> requirement.

<u>See</u> <u>Gilliam v. Black</u>, 2019 WL 3716545, at *10 (D. Conn. Aug. 7, 2019).  However, "[b]ecause

a detainee's rights under the Fourteenth Amendment are at least as great as the Eighth

Amendment protections available to a convicted prisoner," if a plaintiff plausibly alleges a

violation of his Eighth Amendment right, by extension, he also plausibly alleges a violation of

his right under the Fourteenth Amendment.[7]  <u>See</u> <u>Joseph v. NYC Dep't of Corrs.</u>, 2020 WL

2128860, at *4 (E.D.N.Y. May 5, 2020) (citing <u>Darnell v. Pineiro</u>, 849 F.3d 17, 29 (2d Cir.

2017)).

"The [<u>mens rea</u>] element of the Eighth Amendment test may [] be met by claims of

sexual abuse."  <u>Boddie v. Schnieder</u>, 105 F.3d at 861.  "Where no legitimate law enforcement or

penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may,

in some circumstances, be sufficient evidence of a culpable state of mind."  <u>Id.</u> at 861.  To

determine the purpose of a jail official's conduct, courts look to timing of the official's actions

and comments made by the jail official during and after an incident.  <u>See</u> <u>Shepherd v. Fisher</u>,

2017 WL 666213, at *18 (S.D.N.Y. Feb. 16, 2017).

Here, plaintiff sufficiently pleads both the objective and <u>mens rea</u> prongs.  With respect

to the objective prong, plaintiff plausibly alleges that the single incident was sufficiently severe

because he claims Dr. Khouri "squeezed [his] penis and testicles so hard [he] lost [his] breath

and tears came to [his] eyes," he had "bruises and hand marks on [his] testicles and penis for

---

[7]     As discussed further below, <u>see</u> <u>infra</u> Part V, some courts have held probation violators
are akin to pretrial detainees and have thus analyzed their Eighth Amendment claims under the
more lenient Due Process Clause of the Fourteenth Amendment.  Because plaintiff plausibly
alleges a claim against Dr. Khouri for sexual abuse under the Eighth Amendment, his allegations
also suffice to state a claim under the Fourteenth Amendment.

weeks," "can't ejaculate when in sexual intimacy," and suffers from "[r]ape trauma syndrome (RTS) (nightmares)."  (Am. Compl. at ECF 6, 12).  Plaintiff further alleges Dr. Khouri's contact with plaintiff has caused flashbacks to sexual abuse he suffered as a child and "brought [plaintiff] to the brink of suicidal ideation."  (Id. at ECF 10, 11).

With respect to the mens rea prong, there are no allegations suggesting any penological purpose for Dr. Khouri's alleged touching.  Even if, as the CCS Defendants argue, an inmate's genitalia may be touched incidentally to conducting a medical exam, plaintiff's allegations respecting Dr. Khouri's conduct raise an inference that such conduct was not incidental to any legitimate penological purpose.  Thus, plaintiff plausibly pleads the mens rea prong of the Eighth Amendment standard.  See Boddie v. Schnieder, 105 F.3d at 861.

Moreover, plaintiff's other allegations respecting the context of the February 28, 2019, examination raise an inference that Dr. Khouri acted with an intent to humiliate plaintiff.  For instance, Dr. Khouri was allegedly consulted on February 27 before plaintiff was sent to the hospital and found to be malingering.  Plaintiff alleges Dr. Khouri was present when HSA Diaz accused plaintiff of faking an illness to be sent to the hospital.  Plaintiff also alleges that before the examination began, Dr. Khouri stated, "I don't give a fuck who your God is and you will not disrespect my staff," (Compl. at ECF 3), and that after she completed the examination, Dr. Khouri stated "get the fuck out."  (Compl. at ECF 4).  Such allegations raise a plausible inference that Dr. Khouri was seeking to humiliate plaintiff.

Accordingly, plaintiff's sexual abuse claim against Dr. Khouri may proceed.

IV.   First Amendment Claims

Defendants argue plaintiff fails to state a claim for First Amendment retaliation.

The Court disagrees as to Dr. Khouri and HSA Diaz but agrees with respect to the other defendants.

A.    Applicable Law

To adequately plead a First Amendment retaliation claim, a plaintiff must plausibly allege:  (i) he engaged in constitutionally protected speech or conduct, (ii) a defendant took adverse action against him, and (iii) the protected speech and adverse action are causally connected.  Dolan v. Connolly, 794 F.3d 290, 294 (2d Cir. 2015).

Courts approach prisoners' retaliation claims "with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act."  Dolan v. Connolly, 794 F.3d at 295.  Accordingly, a prisoner pursuing a retaliation claim must not rest on "wholly conclusory" allegations, but rather must allege "specific and detailed" supporting facts.  Id.

With respect to the first element, "[f]iling a lawsuit or an administrative complaint and filing prison grievances all constitute protected activities."  Gilliam v. Black, 2019 WL 3716545, at *15 (citing Dolan v. Connolly, 794 F.3d at 294).

In addition, requesting medical attention may be considered a protected activity. Although "courts in the Second Circuit have not decided the issue," "when faced with such a claim, district courts in the Second Circuit frequently assume, but do not decide, that requests for medical attention are protected by the First Amendment for the purpose of analyzing the merits of a retaliation claim."  See James v. Gage, 2019 WL 6251364, at *6 (collecting cases); see also Maxwell v. City of New York, 108 F. App'x 10, 12 (2d Cir. 2004) (summary order) (agreeing

with district court's assumption that "medical attention can be considered a constitutionally protected statement").

Regarding the second element, "[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003). Retaliatory acts that fail to meet this standard are "simply de minimis and therefore outside the ambit of constitutional protection." Id. Courts tailor the inquiry "to the different circumstances in which retaliation claims arise, bearing in mind that prisoners may be required to tolerate more than average citizens, before a retaliatory action taken against them is considered adverse." Id. Moreover, although a prison inmate has "no general constitutional right to be free from being falsely accused in a misbehavior report," Boddie v. Schnieder, 105 F.3d at 862, prison officials may not retaliate against inmates for exercising their constitutional rights, see Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995). See also Franco v. Kelly, 854 F.2d 584, 589 (2d Cir. 1988) (claim that prison officials filed false disciplinary charges against inmate in retaliation for his cooperation with state investigation sufficiently stated Section 1983 claim).

Finally, "[a] plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009). To sufficiently allege a causal connection, the plaintiff's "allegations must support an inference that the protected conduct was a substantial and motivating factor for the adverse action[]." Dorsey v. Fisher, 468 F. App'x 25, 27 (2d Cir. 2012) (summary order).

B.     Application

Liberally construed, the amended complaint alleges two protected activities:  first, on February 27, 2019, plaintiff requested to go to the hospital and sought non-prescribed medicine; and second, plaintiff sought redress for the alleged sexual abuse by reporting the abuse to Sgt. Lyons on February 29, 2019, and by filing a grievance on March 1, 2019.

As to plaintiff's request for medical attention and non-prescribed medicine on February 27, 2019, plaintiff plausibly alleges that Dr. Khouri's squeezing of plaintiff's genitalia and HSA Diaz's involvement in the filing of the misbehavior report were adverse actions taken in response to plaintiff's February 27, 2019, request to go to the hospital and request for non-prescribed pain medication.  Given the early stage of the litigation, the Court assumes, as other courts in this Circuit have done, that such requests were protected speech.  See, e.g., James v. Gage, 2019 WL 6251364, at *6.

Plaintiff also plausibly alleges the second prong of the retaliation analysis, that a similarly situated inmate of ordinary firmness would view a sexual assault or misbehavior report—along with the concomitant withdrawal of privileges—as a deterrent to seeking medical attention.

Finally, plaintiff has plausibly alleged a causal connection given the close timing between the February 27 visit to the hospital and the alleged adverse actions, both of which happened the following day.  In addition, plaintiff's other allegations raise an inference that the "protected conduct was a substantial and motivating factor for the adverse actions."  Dorsey v. Fisher, 468 F. App'x at 27.  Indeed, the misbehavior report indicates Dr. Khouri and HSA Diaz consulted with each other before plaintiff was sent to the hospital on February 27, whereupon the emergency doctor concluded plaintiff was malingering.  In addition, in Dr. Khouri's presence, HSA Diaz said to plaintiff, "you fake all your injuries you faked everything" and yelled at

14

plaintiff "in a threatening manner." (Compl. at ECF 3). Plaintiff also claims that HSA Diaz said, "I should write you up." (Id.). These allegations raise an inference that Dr. Khouri and HSA Diaz may have taken adverse action against the plaintiff because although they sent plaintiff to the hospital for abdominal pain, they were later informed by the emergency room doctor that plaintiff was malingering. Accordingly, plaintiff has plausibly alleged a First Amendment retaliation claim respecting the February 27, 2019, hospital visit and subsequent conduct by Dr. Khouri and HSA Diaz.

However, to the extent plaintiff alleges the February 28 misbehavior report was filed in response to his reporting the alleged sexual assault to Sgt. Lyons or to filing a grievance regarding the sexual assault, such claim fails. Plaintiff alleges he told Sgt. Lyons about the alleged assault on March 1 and that he filed the grievance on March 1—both after the February 28 misbehavior report was filed. Accordingly, plaintiff fails plausibly to allege a causal connection because the allegedly adverse action occurred <u>before</u> plaintiff engaged in protected activity respecting his complaint to Sgt. Lyons and the filing of the March 1 grievance.

Similarly, to the extent plaintiff alleges he was prohibited from sending certified legal mail in response to his reporting the alleged sexual assault to Sgt. Lyons or to filing a grievance regarding the sexual assault, such claim also fails. Plaintiff fails plausibly to allege the prohibition on sending certified legal mail was an adverse action "that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." <u>Davis v. Goord</u>, 320 F.3d at 353. Moreover, plaintiff's allegations do not "support an inference" that reporting the sexual abuse to Sgt. Lyons or filing the March 1 grievance were "substantial and motivating" factors for the mail prohibition. <u>Dorsey v. Fisher</u>, 468 F. App'x at 27.

Accordingly, plaintiff's claim that he was retaliated against based on reporting the alleged sexual assault to Sgt. Lyons and filing a grievance based on the sexual assault must be dismissed.  Plaintiff's retaliation claim based on seeking medical attention and non-prescribed medicine on February 27, 2019, shall proceed against HSA Diaz for her involvement in filing the misbehavior report and against Dr. Khouri for allegedly sexually abusing him.

V.    Deliberate Indifference Claims

As an initial matter, plaintiff alleges he was a parole violator during the relevant time period.  "This Circuit has not fully addressed whether a probationer awaiting disposition of his revocation proceeding is considered a prisoner or a pretrial detainee for purposes of the Eighth Amendment."  See Reinoso-Delacruz v. Ruggiero, 2019 WL 2062434, at *2–3 (D. Conn. May 9, 2019).  Nevertheless, some courts have held probation violators are akin to pretrial detainees and thus analyzed their claims under the more lenient Due Process Clause of the Fourteenth Amendment.  See id. at *3 (treating as pretrial detainee a plaintiff who "was not found guilty of violating his probation until after" the alleged assault at issue).  Accordingly, the Court treats plaintiff's status as an alleged parole violator as equivalent to a pretrial detainee and analyzes plaintiff's deliberate indifference claims under the more lenient standard for pretrial detainees.

Deliberate indifference claims brought by pretrial detainees are analyzed under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment, because "[p]retrial detainees have not been convicted of a crime and thus 'may not be punished in any manner—neither cruelly and unusually nor otherwise.'"  Darnell v. Pineiro, 849 F.3d at 29.  To state a deliberate indifference claim, plaintiff's allegations must satisfy two prongs:  an objective prong and a mens rea prong.  Id.  Namely, plaintiff must plausibly allege "that the challenged

conditions were sufficiently serious," and defendants "acted with at least deliberate indifference to the challenged conditions." Id.

To plead the objective prong, a pretrial detainee must plausibly allege the challenged conditions, "either alone or in combination, pose[d] an unreasonable risk of serious damage to his health." Darnell v. Pineiro, 849 F.3d at 30. "There is no static test to determine whether a deprivation is sufficiently serious; instead, the conditions themselves must be evaluated in light of contemporary standards of decency." Id.

To plead the mens rea prong, a pretrial detainee must plausibly allege "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed . . . even though the defendant-official knew, or should have known," of the risk. Darnell v. Pineiro, 849 F.3d at 35. The Fourteenth Amendment's mens rea prong "is defined objectively" and "can be violated when an official does not have subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm." Id.

A.    Deliberate Indifference to Medical Needs Claim

The CCS Defendants argue plaintiff has not plausibly alleged a claim for deliberate indifference to serious medical needs.

The Court agrees with the CCS Defendants. However, liberally construing plaintiff's allegations, the Court concludes plaintiff has plausibly alleged a deliberate indifference to serious medical needs claim against Sgt. Lyons.[8]

---

[8]    Although plaintiff alleges Sheriff DuBois and PREA Coordinator Capt. Potter "denied [plaintiff] medical attention," plaintiff includes no allegations to support this conclusory statement. Accordingly, to the extent plaintiff alleges a deliberate indifference to serious medical needs claim as to DuBois and Potter, such claim must be dismissed. (Am. Compl. at ECF 13).

In the context of medical care, two inquiries determine whether a deprivation is objectively serious.  "The first inquiry is whether the prisoner was actually deprived of adequate medical care."  Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006).  Because "the prison official's duty is only to provide reasonable care," prison officials are liable only if they fail "'to take reasonable measures' in response to a medical condition."  Id. at 279–80 (quoting Farmer v. Brennan, 511 U.S. 825, 847 (1994)).

The second inquiry is "whether the inadequacy in medical care is sufficiently serious."  Salahuddin v. Goord, 467 F.3d at 280.  If the allegedly offending conduct "is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious."  Id.  Relevant factors in determining "the seriousness of the medical condition include whether 'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'"  Id.  (quoting Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)).

The mens rea prong "is defined objectively" and "can be violated when an official does not have subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm."  Darnell v. Pineiro, 849 F.3d at 35.  "[D]istinguishing between negligent and reckless medical care is a difficult task, especially at the motion-to-dismiss stage where courts lack the benefit of expert opinion."  Zhang v. City of New York, 2018 WL 3187343, at *8 (S.D.N.Y. June 28, 2018).  Courts often look to the "degree of risk associated with the negligent treatment."  See id. (collecting cases).

Here, plaintiff fails to allege Dr. Khouri or HSA Diaz deprived him of medical care, much less "adequate medical care."  Salahuddin v. Goord, 467 F.3d at 279.  In addition, although

plaintiff alleges CCS did not examine him after the alleged sexual assault despite having submitted a sick call slip, Section 1983 liability cannot be predicated on a theory of respondeat superior.  See City of Canton v. Harris, 489 U.S. 378, 385 (1989).  Thus, plaintiff fails to allege a deliberate indifference to serious medical needs claim against any of the CCS Defendants.

However, plaintiff plausibly alleges Sgt. Lyons "actually deprived [him] of adequate medical care."  Salahuddin v. Goord, 467 F.3d at 279.  Plaintiff alleges that despite his request to go to the medical unit to have a rape kit administered, Sgt. Lyons told plaintiff to go back to his cell.  (Am. Compl. at ECF 12).  Plaintiff also plausibly pleads his condition was sufficiently serious because he alleges he had bruises and hand marks on his testicles and penis for weeks.

Plaintiff also plausibly alleges the mens rea prong with respect to Sgt. Lyons.  Plaintiff alleges Sgt. Lyons took his statement about the alleged sexual abuse and that plaintiff asked Sgt. Lyons to go to the medical unit.  Thus, plaintiff has plausibly alleged Sgt. Lyons knew or should have known, but intentionally or recklessly disregarded, plaintiff's serious medical needs.

Accordingly, plaintiff's deliberate indifference to serious medical needs claim may proceed against Sgt. Lyons only.

B.   Failure to Protect Claim

The County Defendants argue plaintiff fails plausibly to allege a failure to protect claim.  The Court agrees.

In the context of a failure to protect claim, the objective prong requires plaintiff to allege, "[a] substantial risk of serious harm" which "can be demonstrated where there is evidence of a previous altercation between a plaintiff and an attacker, coupled with a complaint by a plaintiff regarding the altercation or a request by a plaintiff to be separated from the attacker."  Rennalls v. Alfredo, 2015 WL 5730332, at *4 (S.D.N.Y. Sept. 30, 2015).

As to the <u>mens</u> <u>rea</u> prong, a plaintiff can sufficiently plead a failure to protect claim "when [the] inmate inform[ed] corrections officers about a specific fear of assault and [was] then assaulted." <u>Beckles v. Bennett</u>, 2008 WL 821827, at *17 (S.D.N.Y. Mar. 26, 2008).

Here, plaintiff does not plausibly allege the County Defendants exposed him to conditions that posed an unreasonable risk of serious damage to his health.  There are no allegations in the amended complaint to suggest plaintiff had any altercation or incident with Dr. Khouri prior to the alleged sexual abuse incident on February 28, 2019.  Moreover, with respect to the allegation that Dr. Khouri winked at plaintiff on March 20, 2019, such allegation is insufficient to rise to the level of a substantial risk of serious harm.

Accordingly, plaintiff's failure to protect claim against the County Defendants must be dismissed.

VI.   <u>Due Process Claims</u>

Defendants argue plaintiff fails to state a claim for a due process violation.

The Court agrees.

To establish a violation of due process, a plaintiff must show:  "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." <u>Giano v. Selsky</u>, 238 F.3d 223, 225 (2d Cir. 2001).  "A prisoner's liberty interest is implicated by prison discipline, . . . only if the discipline imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Palmer v. Richards</u>, 364 F.3d 60, 64 (2d Cir. 2004).  In assessing the duration prong of the analysis, "restrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and thus require proof of conditions more onerous than usual." <u>Davis v. Barrett</u>, 576 F.3d 129, 133 (2d Cir. 2009).

Here, plaintiff alleges that as a result of being charged with disruptive conduct, pretending to be sick or injured, and violating general rules, he was "confined" and denied "rec, phone, school, law library, TV" for eight days.  (Am. Compl. at ECF 20).

These allegations are insufficient to state a due process claim.  First, plaintiff fails to allege he was "confined" for an atypical amount of time.  See Davis v. Barrett, 576 F.3d at 133. Second, he fails to allege facts sufficient to suggest the conditions of his temporary confinement were more onerous or severe than usual.  C.f. Zappulla v. Fischer, 2013 WL 1387033, at *7–8 (S.D.N.Y. Apr. 5, 2013) (allegations that plaintiff was confined to keep-lock housing for thirty-one days, with atypically harsh conditions, insufficient to state a due process claim).

Accordingly, plaintiff's due process claim must be dismissed.

VII.   Investigative Process

To the extent plaintiff complains about the processes followed—or not followed—in response to reporting the alleged sexual assault, there is "no constitutionally protected right to a proper investigation."  Gilliam v. Black, 2019 WL 3716545, at *7.  "Nor is a victim of allegedly criminal conduct entitled to a criminal investigation or the prosecution of the alleged perpetrator of the crime."  Id.  Thus, plaintiff's allegations that defendants failed to "follow ['PREA'] policy and customs or procedures," and that the Sheriff's office dropped its investigation, do not rise to the level of a constitutional violation.  (Compl. at ECF 4).

VIII.   Grievance Procedure

The Court liberally construes plaintiff's amended complaint to allege violations of his constitutional rights with respect to the grievance process.

"[I]nmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983."  Cancel v. Goord, 2001

WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001).  "Therefore, the refusal to process an inmate's

grievance or failure to see to it that grievances are properly processed does not create a claim

under § 1983."  Id.  "Indeed, any claim that plaintiff[] [was] deprived of [his] right to petition the

government for redress is belied by the fact of [his] bringing this lawsuit."  Alvarado v.

Westchester County, 22 F. Supp. 3d 208, 214 (S.D.N.Y. 2014).

Accordingly, any claim for an insufficient grievance procedure must be dismissed.

IX.     PREA Claim

To the extent plaintiff alleges a claim against defendants for violating the PREA, such

claim must be dismissed because "there is no private right of action for inmates to sue prison

officials for non-compliance with the PREA."  See Gilliam v. Black, 2019 WL 3716545, at *5.

X.      Monell Claim

Defendants argue plaintiff has not plausibly alleged a Monell claim against CCS and the

County of Orange.

The Court agrees.

A municipality is liable for a deprivation of a citizen's rights pursuant to Section 1983

"when execution of a government's policy or custom, whether made by its lawmakers or by

those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."

Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  A municipality may be held liable for

inadequate training, supervision, or hiring when the failure to train, hire, or supervise amounts to

deliberate indifference to the rights of those with whom municipal employees will come into

contact.  City of Canton v. Harris, 489 U.S. at 388.

Here, plaintiff merely alleges in conclusory fashion that the County of Orange and CCS

failed properly to train and supervise their employees.  He has not identified any specific

municipal policy or custom that caused his injuries or provided any allegations supporting a plausible inference of a pattern and practice through a failure to train or supervise.  This is insufficient to allege a Monell claim.

Accordingly, plaintiff's Monell claim must dismissed.

XI.     Punitive Damages

The CCS Defendants argues plaintiff's request for punitive damages must be dismissed. The Court disagrees.

"Punitive damages are available in a § 1983 action when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  Lee v. Edwards, 101 F.3d 805, 808 (2d Cir. 1996).  At this early stage of the proceedings, absent further information respecting defendants' motives or intents, the Court will not dismiss plaintiff's request for punitive damages.  If appropriate, this argument can be raised at summary judgment.

XII.    State Law Claims

Defendants argue the Court should either dismiss or decline to exercise supplemental jurisdiction over any plausible state law claims asserted in the amended complaint.

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  Here, however, the Court does not discern any plausible state law claim in the amended complaint.

Accordingly, the Court lacks a basis for asserting supplemental jurisdiction given the lack of plausible state law claims.

**CONCLUSION**

The motions to dismiss are GRANTED IN PART and DENIED IN PART.

The following claims shall proceed:  (i) sexual abuse claim against Dr. Khouri, (ii) retaliation claim based on seeking medical care against Dr. Khouri and HSA Diaz; and (iii) deliberate indifference to serious medical needs claim against Sgt. Lyons.  All other claims are dismissed.

The Clerk is instructed to terminate the motions.  (Doc. ##58, 62).  The Clerk is also instructed to terminate from the docket the following defendants:  Correct Care Solutions, LLC; Sheriff Carl E. DuBois; County of Orange; and Captain James Potter.

By September 10, 2020, Dr. Khouri, HSA Diaz, and Sgt. Lyons shall file an answer.

By separate Order, the Court will schedule an initial conference.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: August 27, 2020
          White Plains, NY


                                            SO ORDERED:


                                            _____
                                            Vincent L. Briccetti
                                            United States District Judge

24